UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LASHUNDA PATRICK o/b/o D.L.H., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:08CV255 ERW |
| ) | (TIA) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the denial of Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act. The case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b).

**I. Procedural History**

On December 1, 2003, Plaintiff filed an application for Supplemental Security Income (SSI) on behalf of her son, D.L.H., alleging disability beginning November 1, 2003. (Tr. 51-53) The application was denied initially and upon reconsideration. (Tr. 18, 43-46) On March 24, 2005, Plaintiff and D.L.H. testified at a hearing before an Administrative Law Judge (ALJ). (Tr. 179-209) On June 21, 2005, the ALJ issued a decision finding D.L.H. not disabled within the meaning of the Social Security Act and not eligible for supplemental security income payments. (Tr. 9-17) On September 8, 2005, the Appeals Council denied Plaintiff's request for review. (Tr. 2-4)

Plaintiff then filed a Complaint in the United States District Court, Eastern District of Missouri, for judicial review of the denial of her application. (Case No. 4:05CV1975 ERW(LMB))

On February 21, 2007, United States Magistrate Judge Lewis M. Blanton issued a Report and Recommendation that the Commissioner's decision be reversed and remanded for further proceedings. (Tr. 252-78) On March 6, 2007, having received no objections, United States District Judge E. Richard Webber issued an Order sustaining, adopting, and incorporating into the Order the Report and Recommendation in its entirety and ordering that the final decision of the Commissioner be reversed and the matter remanded to the Commissioner for further proceedings.[1] (Tr. 251)

On September 25, 2007, Plaintiff and D.L.H. testified at a hearing before another ALJ, Administrative Law Judge Randolph Schum. (Tr. 229-47) On November 15, 2007, ALJ Schum issued a decision finding that the claimant had not been disabled, as defined in the Social Security Act, since December 1, 2003. (Tr. 213-28) Because no exceptions were filed, and the Appeals Council did not review the ALJ's decision on its own motion, the November 15, 2007 decision of ALJ Schum stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

To avoid unnecessary duplication and redundancy, the undersigned incorporates the Evidence Before the ALJ set forth by Magistrate Judge Blanton in his February 21, 2007 Report and Recommendation and adds the evidence procured subsequent to that Report and Recommendation. (Tr. 253-63)

---

[1] While this application was pending, Plaintiff filed a second application for SSI benefits on June 27, 2005. The application was denied initially. However, on July 18, 2006, ALJ Cosentino found D.L.H. disabled as of June 27, 2005 but declined to reopen the prior decision. (Tr. 214; Pl. Exh. A)

2

**A.     Hearing Before ALJ Schum**

During the hearing held on September 25, 2007, Plaintiff, Lashunda Patrick, and D.L.H., the claimant, were represented by counsel. Ms. Patrick first testified regarding her son. Ms. Patrick stated that D.L.H. had a 14-year-old brother and some siblings on his dad's side of the family. Ms. Patrick did not work and was with D.L.H. during the day and on weekends. She testified that D.L.H. attended school at Central Middle School. He previously attended Highland Elementary and Highland Middle schools. He did not belong to any after-school clubs or sports teams. D.L.H. attended both regular classes and special education classes for speech and reading. Ms. Patrick further testified that Dr. Scott Trail had been treating D.L.H. for about four years. D.L.H. took Adderal, Depakote, and Risperidol, which Ms. Patrick made sure he took as prescribed. D.L.H. saw Dr. Trial once every three or four months. (Tr. 231-4)

With regard to school, Ms. Patrick testified that D.L.H. was doing better but that she received a call two weeks earlier from a teacher complaining about D.L.H.'s disruptive behavior. D.L.H. was banging on tables, throwing paper, getting out of his seat, and being disobedient. According to the teacher, D.L.H. suddenly changed his behavior and apologized. Ms. Patrick had to explain D.L.H.'s condition to the teacher, as his IEP did not contain the diagnosis. Dr. Trail eventually provided the diagnosis to the school for placement in the IEP. Ms. Patrick further testified that D.L.H.'s Social Studies teacher, Ms. Young, knew D.L.H. well. Ms. Young had informed Ms. Patrick that D.L.H. was constantly disrupting the class. He played with clay and rubber bands; threw paper; and did not stay on task. At home, D.L.H. was disruptive as well and was unable to control himself. He constantly aggravated his brother, even threatening him with a knife. D.L.H. was 13 years old at the

3

time of the hearing, and Ms. Patrick testified that his behavior had remained the same over the past couple of years. (Tr. 234-6)

Ms. Patrick stated that she had discussed D.L.H.'s behavior at home and at school with Dr. Trail, who had adjusted his medication. Ms. Patrick reported that Dr. Trail was running blood tests to see if he should change the Depakote because the medication was not working despite an increase in the dosage. (Tr. 235-6)

Ms. Patrick further testified that D.L.H. did not socialize with any friends. He did not visit anyone at a house or a community center. No one came over to play with him. On a typical Saturday, D.L.H. played video games or watched cartoons. He sometimes played video games with his brother, but they did not get along when they played. D.L.H. also did chores around the house. He took out the trash; cleaned his room, living room, and upstairs bathroom; and vacuumed. However, Ms. Patrick testified that she had to stand and watch him, or D.L.H. would not complete the chores. He could microwave meals, but Ms. Patrick did not allow him to use the stove for fear he would burn something due to inattention. D.L.H. did not run errands on his own. He went to his dad's house every other weekend but needed adult supervision. (Tr. 236-8)

Ms. Patrick stated that D.L.H. rode the bus to and from school, which was three or four miles away. Over the past year, she received information that D.L.H. almost had a fight on the bus and that the bus driver had to break it up. D.L.H. was in the principal's office when Ms. Patrick learned of the altercation. (Tr. 238-9)

Ms. Patrick also testified that D.L.H. experienced side effects from his medications. Specifically, he complained of headaches; however she had not mentioned the headaches to Dr.

4

Trail. D.L.H.'s Depakote was adjusted over the past summer to see if the increased dosage would make a difference in his behavior. (Tr. 239-40)

During the hearing, the ALJ noted a gap in treatment with Dr. Trail between February of 2005 and February of 2006. Ms. Patrick opined that the gap was due to scheduling conflicts. She clarified that sometimes she had to wait to get an appointment and sometimes she had to cancel when she experienced her own health problems. D.L.H. saw Dr. Trail on July 31, 2006, and he did provide refills in February and March of 2007 without an office visit. Ms. Patrick testified that D.L.H. last saw Dr. Trail in the summer of 2007. (Tr. 240)

D.L.H. also testified at the hearing. At that time, he was 13 years old and in the seventh grade. He stated that he was doing good in school and that his favorite subject was Science. His least favorite subject was Math. D.L.H. testified that he wanted to be a scientist when he grew up. (Tr. 241- 2)

D.L.H. stated that he took his medication mostly every day. He was supposed to take his medication every morning and every night, and his mom and dad made sure that he took the medication. He further testified that things had not improved at home since taking the medication and that he had been bad some days. D.L.H. stated that his brother would make him mad, and D.L.H. would "go off on him" and hit him. (Tr. 242-4)

Ms. Patrick's attorney called her back to the witness stand, and she testified that D.L.H.'s testimony regarding his medication was inaccurate. Ms. Patrick stated that he seemed confused about what medications he took. She also testified that she had caught him not taking his medication and that one time in the past month, he threw his medication away out of anger. (Tr. 244-5)

5

**B.     Medical Evidence[2]**

On October 19, 2007, D.L.H.'s teacher, Yolanda Young, completed a School Activities Questionnaire. Ms. Young noted that she could not determine D.L.H.'s functional grade level due to his lack of productivity in class. She reported that D.L.H. had been disciplined in class due to displaying outbursts, threatening students, and banging on desks. Ms. Young also opined that D.L.H. had "marked" limitations in several areas of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for self. (Tr. 293-97) D.L.H.'s Sixth Grade report card indicated that his progress in most subjects showed areas of concern and that he received mostly Ds and an F in achievement. (Tr. 299) In addition, D.L.H. was suspended in for fighting in April 2003; suspended for fighting in January 2005; suspended for fighting in March 2005; suspended for fighting in June 2005; suspended for refusing staff request in April 2006; suspended for fighting in May 2006; and disciplined and suspended in November 2006 for harassment. (Tr. 301-304)

More recent treatment records from Dr. Trail indicated that in April 2005, D.L.H. was easily annoyed and upset, with temper issues, which included making verbal threats and pulling a knife on his brother. Dr. Trail assessed Bipolar Disorder. Dr. Trail adjusted D.L.H.'s medication on several occasions between February 2006 and March 2007 and noted some slight improvement. (Tr. 331-333)

---

[2] Although ALJ Schum inexplicably does not assess the most recent medical evidence pertaining to D.L.H. in his opinion, the Plaintiff asserts, and the Defendant does not refute, that ALJ Schum indicated in a pre-hearing conference that he would consider the entire record, including evidence before ALJ Cosentino and the subsequent decision granting full benefits.

On January 3, 2006, D.L.H. underwent a psychological evaluation with David Lipsitz, Ph.D. Dr. Lipsitz administered the Wechsler Intelligence Scale for Children (WISC-IV) IQ test. The results were as follows: "Verbal Comprehension Index – 73, Perceptual Reasoning Index – 69, Working Memory Index 56, Processing Speed Index – 78, and Full Scale IQ – 62, placing his general level of intellectual functioning within the 'mentally retarded' range." With regard to D.L.H.'s prognosis, Dr. Lipsitz stated that D.L.H. was "in need of ongoing psychiatric treatment combining medication with individual psychotherapy and behavior and management counseling. However, due to his extremely limited cognitive functioning, the prognosis at this time for future adjustment must remain somewhat guarded." Dr. Lipsitz diagnosed bipolar disorder, rule out ADHD; mental retardation, mild, rule out learning disability; school problems, problems with social environment; and a Global Assessment of Functioning (GAF) score of 50.[3]

Dr. Lipsitz also completed a Medical Source Statement, in which he found that D.L.H. exhibited "extreme" limitations in his ability to learn new material; apply previously learned material; apply problem solving skills; and reading comprehension. He exhibited "marked" limitations in his ability to comprehend and follow oral instructions; responsively answer questions; express ideas in writing; and solve math problems. With regard to attending and completing tasks, D.L.H. showed "marked" limitations in his ability to focus and maintain attention; carry through and finish activities; work without needing task redirection; maintain pace; carry out instructions; and control impulses. While he exhibited mostly "slight" limitations when interacting and relating with others, Dr. Lipsitz did note that D.L.H.'s ability to avoid temper outbursts was markedly limited. Further, although

---

[3] A GAF of 41 to 50 indicates "Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000).

7

D.L.H. had some "slight" limitations in caring for himself, he displayed "marked" limitations in coping with stress and coping with change. Dr. Lipsitz opined that D.L.H. possessed these limitations from birth. (Pl. Exh. B)

On April 28, 2006, Ms. Collins, D.L.H.'s fifth grade teacher, completed a School Activities Questionnaire. She stated that D.L.H.'s reading level was 3.5, and his math level was 4.1. Further, she noted that Plaintiff had been disciplined and suspended numerous times throughout the school year. According to Ms. Collins, D.L.H. showed "marked" limitations in most categories of acquiring and using information and attending and completing tasks. He only exhibited limitations of "slight" to "none" in his ability to interact and relate with others; move about and manipulate objects; and care for self. (Pl. Exh. C)

### III. The ALJ's Determination

In a decision dated November 15, 2007, ALJ Schum noted that the case was remanded pursuant to the United States District Court remand order with instructions to accord proper weight to the opinion of the treating psychiatrist, Scott Trail, M.D., and to more fully evaluate the claimant's subjective symptoms and credibility. He also noted that ALJ Cosentino issued a favorable decision while this matter was pending. (Tr. 214)

ALJ Schum found that D.L.H. was a school-age child on December 1, 2003, the date the application was protectively filed, and at all times relevant to the decision. He further noted that D.L.H. had not engaged in substantial gainful activity at any time relevant to the decision. Further, the ALJ determined that D.L.H. had the severe impairment of Attention Deficit Hyperactivity Disorder. ALJ Schum noted that, although D.L.H. was ultimately diagnosed with bipolar disorder, this diagnosis was provisional during the time in question and that D.L.H.'s symptoms had

8

deteriorated or changed at some point. ALJ Schum further noted that, although the District Court suggested that a consultative examination might be of value, the passage of time and the later treating diagnosis of bipolar disorder limited the functional utility that a consultative evaluation might serve. The ALJ stated, "If Dr. Trail did not believe that the diagnosis of a bipolar disorder was conclusive, no other opinion could be afforded much weight." (Tr. 217)

ALJ Schum further found that D.L.H. did not have an impairment or combination of impairments that met or medically equaled one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. He further determined that D.L.H. did not have an impairment or combination of impairments that functionally equaled the listings. ALJ Schum stated that he afforded significant weight to Dr. Trail's opinion, as the treating psychiatrist, who diagnosed and treated D.L.H. for ADHD. However, ALJ Schum found that the school records did not reflect symptoms and functional limitations consistent with Dr. Trail's opinion that D.L.H. was disabled. In addition, the ALJ noted that Dr. Trail relied on information provided by D.L.H.'s mother and her description of the symptoms, as opposed to personal observation and an independent psychiatric basis to support a conclusion that D.L.H. had marked limitations. ALJ Schum stated, that, while Dr. Trail relied heavily on Ms. Patrick's subjective reports, the ALJ had good reason to question the reliability based on observations from school teachers and staff, rendering Dr. Trail's opinion less persuasive. (Tr. 218-20)

ALJ Schum also found that the course of treatment pursued was not consistent with the course one would expect if D.L.H. were truly disabled. He noted that D.L.H. did not attend counseling; was not frequently in trouble; and functioned well academically. ALJ Schum stated, "[t]o be very blunt, the fact that the claimant did not see the treating psychiatrist for approximately one

9

year and this gap in treatment occurred shortly after his mother obtained a favorable report from the treating psychiatrist, coupled with the fact that this treating relationship began when this application was protectively filed, suggests that the claimant was being taken to a psychiatrist to obtain benefits as well as for therapeutic reasons." He found that the statements concerning the intensity, persistence, and limiting effects of the D.L.H.'s symptoms were not entirely credible and that the record suggested some behavior problems distinct from ADHD or a mood disorder, as well as responses to stressors in his life. (Tr. 221-22)

ALJ Schum then assessed D.L.H.'s six domains of function and found no limitation in acquiring and using information; less than marked limitation in attending and completing tasks; marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself; and no limitation in health and physical well-being. The ALJ then concluded that D.L.H. had not been disabled since December 1, 2003, the date the application was filed. (Tr. 223-27)

## IV. Legal Standards for Child Disability Cases

20 C.F.R. § 416.906 provides the definition for disability in children. That provision states:

> If you are under age 18, we will consider you disabled if you have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

In determining disability, the ALJ must utilize a sequential evaluation process set forth in 20 C.F.R. § 416.924. The ALJ first determines whether plaintiff is doing substantial gainful activity. If so, the plaintiff is not disabled. 20 C.F.R. § 416.924(b). If the plaintiff is not working, the ALJ considers plaintiff's physical or mental impairment(s) to determine whether plaintiff has a medically

10

determinable impairment(s) that is severe. If the impairment(s) is not medically determinable or is a slight abnormality that causes minimal limitations, the ALJ will find that plaintiff does not have a severe impairment and is not disabled. 20 C.F.R. § 416.924(c). If the impairment(s) is severe, it must meet or medically or functionally equal the listings. 20 C.F.R. § 416.924(d); see also Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853 (8th Cir. 2003) (setting forth the three-step sequential steps to determine disability in children). The listings for mental disorders in children are contained in 20 C.F.R. Part 404, Subpart P, §§ 112.00-112.12.

Further, when determining functional limitations, 20 C.F.R. § 416.926a(a) provides that where a severe impairment or combination of impairments does not meet or medically equal any listing, the limitations will "functionally equal the listings" when the impairment(s) "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." The ALJ considers how a plaintiff functions in activities in the following six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating to others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). An impairment(s) is of listing-level severity if a plaintiff has "marked" limitations in two of the domains in paragraph (b)(1) or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not reweigh the evidence or review the record de novo. Id. (citation omitted). Instead, even if it is possible to

draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id.; Clarke v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

The ALJ may discount plaintiffs subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Id.; Ricketts v. Secretary of Health and Human Servs., 902 F.2d 661,664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[4] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## V. Discussion

---

[4]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

12

Plaintiff first argues that ALJ Schum erred because he did not follow the Report and Recommendation of Magistrate Judge Blanton, thereby violating the "law of the case" doctrine. Plaintiff further asserts that the ALJ's determination is not supported by substantial evidence because his assessment was based upon improper assumptions about psychiatry and not upon testimony from a medical expert. Plaintiff also contends that ALJ Schum provided an insufficient analysis of whether D.L.H. met a listing. Further, Plaintiff avers that the ALJ's decision is internally inconsistent regarding the amount of weight he afforded to the treating physician, Dr. Trail, and that ALJ Schum improperly rejected Dr. Trail's opinions. The Defendant, on the other hand, contends that the ALJ properly determined that Plaintiff's impairments did not meet, equal, or functionally equal a listed impairment. Defendant also maintains that ALJ Schum did not violate the law of the case doctrine. Further, Defendant asserts that the ALJ afforded proper weight to Dr. Trail's opinion, properly evaluated D.L.H.'s provisional bi-polar disorder diagnosis, and properly evaluated Plaintiff's impairments under the Listing of Impairments.

The undersigned finds that substantial evidence does not support ALJ Schum's determination and that the case should be reversed and remanded with instructions to grant full benefits for the period between December 1, 2003, the date Plaintiff filed the application, and June 27, 2005, the date D.L.H. began receiving benefits. Specifically, the undersigned agrees with the Plaintiff's argument that ALJ Schum did not follow the Report and Recommendation of Magistrate Judge Blanton, adopted by District Judge Webber, thereby violating the "law of the case" doctrine.

"'The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings . . . .'" Brachtel v. Apfel, 132 F.3d 417, 419 (8th Cir. 1997) (quoting United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995)). This doctrine

also applies to administrative agencies on remand. Id. (citations omitted). Specifically, the law of the case doctrine requires "'the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart.'" Grigsby v. Barnhart, 294 F.3d 1215, 1218 (10th Cir. 2002) (quoting Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998)). The three "exceptionally narrow" reasons to depart from the law of the case doctrine include: (1) evidence in a subsequent trial is substantially different; (2) controlling authority subsequently makes a contrary decision regarding the law applicable to that issue; and (3) the decision is clearly erroneous and its application would be manifestly unjust. Id. at 1219 n.4 (quotations omitted).

In the instant case, the law of the case doctrine applies, and Defendant has failed to demonstrate that any of the narrow exceptions apply. Indeed, Defendant seems to misread Judge Blanton's opinion altogether. Defendant maintains that "the District Court did not specifically instruct the ALJ to proceed on remand based on a finding of fact that the ALJ needed to give substantial/controlling weight to Dr. Trail. Rather, the Court noted that the ALJ erred in assigning 'little weight' to the opinion of Dr. Trail, and ordered that the ALJ accord the proper weight, but did not go so far as to direct the ALJ as to what the proper weight was (Tr. 268)." (Defendant's Brief in Support of the Answer, pp. 9-10) The Defendant needed only to turn the page to read Judge Blanton's finding that "Dr. Trail is a specialist in the field of psychiatry, and diagnosed plaintiff with ADHD and possible bipolar disorder. Dr. Trail prescribed psychotropic drugs for the treatment of plaintiff's psychiatric impairments. As such, Dr. Trail's opinion was entitled to substantial weight, absent inconsistencies in the record." (Tr. 268-69)

Throughout the opinion, Judge Blanton specifically pointed out the flaws in the ALJ's

rationale that the school records showed significant improvement in D.L.H.'s behavior and ability to focus, which contradicted Dr. Trail's opinion. (Tr. 268-69) Although ALJ Schum now uses the magic words "significant weight," he discounts Dr. Trail's medical opinions for exactly the same reasons that prompted Judge Blanton's initial remand recommendation. (Tr. 220)

While ALJ Schum found Dr. Trail's treatment notes internally inconsistent (Tr. 220), Judge Blanton had assessed Dr. Trail's medical records, including the Child's Functional Assessment Form finding "marked" limitations in several areas and a GAF of 50. Judge Blanton held that "Dr. Trail's opinion is supported by his treatment notes, which reveal that despite initial improvements due to medication, plaintiff continued to experience significant behavioral problems." (Tr. 269-70)

Judge Blanton further found that "Dr. Trail's opinion is also supported by plaintiff's school records." (Tr. 270) For instance, teachers indicated that D.L.H. required an increased amount of guidance and support, and his reading and writing levels were below expected age levels. Teachers also noted that he had problems in reading, writing, and math, and that he was easily distracted and inconsistent, causing concerns about possible retention.[5] (Tr. 270) Judge Blanton then concluded that "the undersigned finds that the ALJ improperly discounted the opinion of Dr. Trail. The ALJ's decision to afford little weight to Dr. Trail's opinion is particularly problematic because there is no contrary medical opinion contained in the record." (Tr. 271) Judge Blanton recommended that additional medical information, including a consultative examination be obtained. (Tr. 271-72)

---

[5] Judge Blanton also discounted the principal's inconsistent letter, as the principal had little contact with or observation of D.L.H. (Tr. 271)

15

Instead of ordering a consultative examination or utilizing the new medical and academic evidence submitted in support of D.L.H.'s second application, to which ALJ Schum had access, he relied on the same evidence and discounted Dr. Trail in the same manner that Judge Blanton found problematic. While Judge Blanton could have reversed with directions to grant benefits, he gave the Defendant the opportunity to fulfill his duty to develop the record fully and fairly. ALJ Schum declined to seize this opportunity and, instead, chose not to follow the law of the case.

Even without the evidence from Dr. Lipsitz, no medical evidence contradicting Dr. Trail's medical opinions and diagnoses exists in the record. Dr. Trail found in a January 2005 Child's Functional Assessment Form that D.L.H. had marked limitations in several areas of attending and completing tasks. He also had a marked limitation in his ability to interact and relate with others, namely to get along with other children. Further, Dr. Trail found that D.L.H. possessed marked limitations in sleeping and coping with stress under the caring for self domain. (Tr. 119-122) Dr. Trail further noted that the ADHD symptoms had been present long term (greater than 5 years) and that D.L.H. had variable responses to medication adjustments. (Tr. 122) Indeed, Judge Blanton previously held that no contradictory medical evidence was present in the record.

The subsequent medical records by Dr. Trail, in addition to school records, reinforce the finding that D.L.H. had "marked" limitations in at least two domains of functioning during the 2003-2005 time period in question and continues to exhibit these limitations. Therefore, because ALJ Schum was bound by this Court's prior decision, and because ALJ Schum did not order a consultative examination or afford proper weight to Dr. Trail's medical assessment as recommended by Judge Blanton and ordered by Judge Webber, the undersigned finds that the case should be

remanded with directions to grant benefits to D.L.H. for the period between December 1, 2003, the date Plaintiff filed the application, and June 27, 2005, the date D.L.H. began receiving benefits.

Accordingly,

**IT IS HEREBY RECOMMENDED** that this cause be **REMANDED** to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

                                       /s/ Terry I. Adelman
                            UNITED STATES MAGISTRATE JUDGE

Dated this   24th   day of July, 2009.